BRAY v DEPARTMENT OF STATE

1. PARTIES—STANDING—INJURY—APPEAL AND ERROR.

A party lacks standing when he or she fails to allege injury; where a party initially alleged injury and the trial court dismissed that aspect of the case, and where the party did not appeal from this dismissal, the party lacks standing to raise this issue on appeal of other issues in the case, since no injury is alleged.

2. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS FUND—PRIMARY BENEFICIARIES—STATUTES.

The primary beneficiaries of the Motor Vehicle Accident Claims Fund and the class of persons to be given priority in recovering from the fund are those harmed by the uninsured motorists.

3. TAXATION—LICENSES—REVENUE MEASURES—POLICE REGULATIONS.

A tax is designed to raise revenue; a license is a grant of permission to do something; a licensing provision will be upheld only if it is primarily intended as a police regulation rather than a revenue raising measure and any money collected pursuant to a licensing statute must be proportionate to the cost of issuing the license and regulating the business to which it applies.

4. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—INSURANCE.

The Motor Vehicle Accident Claims Act was not intended either as a registration provision or as a licensing provision but rather was designed to establish a state administered insurance program similar in some respects to a private insurance program.

5. AUTOMOBILES—MOTOR VEHICLE ACCIDENT CLAIMS ACT—INSURANCE CANCELLATIONS—STATUTES.

The Motor Vehicle Accident Claims Act fee is similar to an

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parties §§ 26–30.
[2, 6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 301, 302.
[3] 51 Am Jur 2d, Licenses and Permits §§ 15, 89.
[4] 43 Am Jur 2d, Insurance § 70.
[5] 43 Am Jur 2d, Insurance §§ 628–648.

insurance premium, and the fee is subject to the statute which requires an insurer, upon cancellation of an insurance policy, to refund to the insured the excess portion of the premium paid by the insured (MCLA 500.3020; MSA 24.13020).

6. AUTOMOBILES—UNINSURED MOTORISTS—MOTOR VEHICLE ACCIDENT CLAIMS FUND—REFUNDS—LIMITATION OF ACTIONS.

Uninsured motorists have no present right to monies in the Motor Vehicle Accident Claims Fund and it was, therefore, error for the court to order the deposit of funds from the fund into a escrow account for eventual refund to them, where it has been determined that the uninsured motorists are entitled to a refund but the statute of limitations on actions against the fund by those injured by uninsured motorists has not yet run and, therefore, it cannot yet be determined whether sufficient funds will be available to first satisfy the claims of those injured.

Appeal from Wayne, Horace W. Gilmore, J. Submitted December 2, 1975, at Detroit. (Docket No. 22790.) Decided May 27, 1976. Leave to appeal denied, 397 Mich —.

Class action by Willie Bray and others against the State of Michigan and others for (1) a refund of one-half the 1973 fee paid by plaintiffs to the Motor Vehicle Accident Claims Fund, (2) recovery from the fund of money contained therein that is not needed to satisfy claims against the fund and (3) an order for a payment to the fund, from the general fund, of interest for money borrowed from and returned to the fund for the use of the general fund. Judgment for plaintiffs on issue one and for defendants on two and three. Plaintiffs appeal on issue three. Defendants cross-appeal on issue one. Affirmed in part, reversed in part, and remanded for further proceedings.

*Harry S. Ellman,* and *Barris, Sott, Denn & Driker* (by *Donald E. Barris, Sharon M. Woods* and *Stephen E. Glazek),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendants.

Before: LESINSKI, C. J., and J. H. GILLIS and ALLEN, JJ.

J. H. GILLIS, J. This is an appeal from a class action filed in Wayne County Circuit Court in August, 1973. Plaintiffs are the class of approximately 350,000 uninsured motorists who, pursuant to the Motor Vehicle Accident Claims Act, MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.,* (hereinafter referred to as MVACA), paid $45 in order to register their uninsured motor vehicles and receive 1973 license plates. Prior to 1973, payment under MVACA of the annual $45 fee entitled the uninsured motorist to drive his uninsured vehicle until April 1 of the following year. In 1973, however, the no-fault insurance act, MCLA 500.3101; MSA 24.13101, became operative. That act required all motorists other than motorcycle owners to carry no-fault insurance as of Ocotber 1, 1973. Thus, in 1973, payment of the annual $45 fee entitled the uninsured motorist to legally drive his uninsured vehicle only until October 1, 1973. After that date, he needed no-fault insurance in order to legally operate his vehicle.

In their complaint, plaintiffs sought refunds of one-half of the 1973 uninsured motorist fees paid into the Motor Vehicle Accident Claims Fund (hereinafter referred to as the Fund), $22.50 per person, plus interest thereon. Also, in addition to the fee refunds, plaintiffs sought to recover from the Fund the fee money contained therein that was not needed to satisfy claims against the Fund. Furthermore, plaintiffs requested the trial court

both to determine a commercially reasonable amount of interest on $45,000,000 transferred by the Legislature from the Fund to the general fund and later repaid, without interest, to the Fund and to order payment of that interest to the Fund.

In August, 1974, plaintiffs filed a motion for partial summary judgment and/or declaratory relief. In a written opinion, the trial judge determined that the $45 fee was an annual license fee paid by uninsured motorists for the privilege of operating their uninsured vehicles. Because the no-fault insurance act required all motorists to carry no-fault insurance as of October 1, 1973, he concluded that the uninsured motorists who paid the 1973 $45 fee received only one-half the protection for which they paid. Consequently, he held that they were each entitled to a refund of one-half the fee paid, plus interest. The trial judge did not, however, decide the remaining issues in plaintiffs' favor. He denied plaintiffs' request for a refund of the surplus money in the Fund, explaining that many claims are still pending against it and many more can still be filed against it because MVACA contains a 3-year statute of limitations (MCLA 257.1118; MSA 9.2818). Concluding, therefore, that he could not determine whether the Fund contained surplus monies, he dismissed that count of plaintiffs' complaint without prejudice.

In addition, he determined that payment of interest on the monies transferred between the Fund and the general fund is a legislative function with which courts cannot interfere. Consequently, he held that the court lacked jurisdiction to order payment to the Fund of a commercially reasonable amount of interest on the $45,000,000 and thus granted summary judgment under GCR 1963, 117.3 to defendants on that issue.

Then, pursuant to a motion by plaintiffs, the trial judge ordered defendants to segregate and deposit in an escrow account, until final disposition of the case, the monies he had ordered refunded plus interest at the rate of six percent from October 1, 1973.

Plaintiffs now appeal as a matter of right, arguing only that the trial court erred in granting summary judgment to defendants on the issue of payment to the Fund of a commercially reasonable amount of interest on the $45,000,000 transferred between the Fund and the general fund. They do not appeal the trial court's dismissal of their request for a refund of any surplus monies in the Fund.

Defendants cross appeal, claiming that the trial court erred in granting plaintiffs a refund of one-half of the 1973 fee money plus interest. They argue, too, that the court erred in ordering defendants to segregate and deposit in an escrow account the fee money plus interest at the rate of six percent from October 1, 1973. We will discuss the arguments *seriatim.*

I.

*Did the trial court err in granting summary judgment to defendants on the issue of payment to the Fund of a commercially reasonable amount of interest on the $45,000,000?*

We believe plaintiffs are precluded from raising their argument because they lack standing. A party who fails to allege that he or she has been injured lacks standing. *Inglis v Public School Employees Retirement Board,* 374 Mich 10; 131 NW2d 54 (1964). In *Inglis, supra,* plaintiff, a retiree, sought to compel defendants, the retirement board,

to follow one statute rather than another in determining the amount of money to be transferred from the school aid fund to the retirement fund. Because plaintiff alleged neither that the benefits to be paid to her as a retiree would be adversely affected nor that her retirement allowance was in arrears, the Court concluded that she had not attempted to show any injury to herself and, therefore, lacked standing. The case at bar is strikingly similar to *Inglis, supra.* Plaintiffs in the instant case initially alleged injury by pleading that they were entitled to the surplus monies in the Fund. But, the trial court dismissed that aspect of their action, and plaintiffs have not appealed from that dismissal. Thus, they no longer claim any interest in the Fund beyond that regarding refund of one-half of the 1973 fee money. Consequently, they have failed to allege injury, and, therefore, lack standing to raise the interest issue.

## II.

*Did the trial court err in granting plaintiffs a refund of one-half of the 1973 fee money plus interest?*

The trial court and the parties approached this issue by examining whether the $45 fee constituted a license fee or a tax. We do not believe it fits neatly into either category. A tax is designed to raise revenue. *Merrelli v City of St Clair Shores,* 355 Mich 575; 96 NW2d 144 (1959). The $45 fee was not assessed for that purpose. A license, on the other hand, is a grant of permission to do something. A licensing provision will be upheld only if it is primarily intended as a police regulation rather than a revenue raising measure. Any money collected pursuant to a licensing statute

must be proportionate to the cost of issuing the license and regulating the business to which it applies. *Vernor v Secretary of State,* 179 Mich 157; 146 NW 338 (1914), *Merrelli, supra.* Although MVACA, on its face, appears to grant permission to uninsured motorists to drive their uninsured vehicles, it was not intended primarily as a registration provision. The title of MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.,* makes this clear. It states:

"An Act providing for the establishment, maintenance and administration of a motor vehicle accident claims fund for the payment of damages for injury to or death of certain persons or property damage arising out of the ownership, maintenance or use of motor vehicles in the state in certain cases; and to provide penalties for violation of this act."

Also, the fact that there is a separate statute, MCLA 257.1 *et seq.;* MSA 9.1801 *et seq.,* which deals specifically with registration of motor vehicles, both insured and uninsured, indicates that MVACA was not intended as a licensing provision. This is further indicated by the fact that the fees imposed under MCLA 257.1 *et seq.;* MSA 9.1801 *et seq.,* which are much lower than the MVACA fee, cover licensing and administration expenses. Thus, the MVACA provisions do not fit under either of the traditionally invoked labels. Instead, they are unique. They seem to be designed to establish a state administered insurance program similar in some respects to a private insurance program. The $45 fee thus could be said to represent an annual insurance premium paid by those who have not acquired private insurance policies. If a private insurance policy is cancelled, MCLA 500.3020; MSA 24.13020, requires the insurer to refund the

excess portion of the premium paid by the insured. Because the MVACA fee is similar to an insurance premium, we believe the policy of MCLA 500.3020; MSA 24.13020 applies, and that portion of the $45 fee covering the time between October 1, 1973, the date the no-fault act became operative, and March 31, 1974, the end of the fee year, should be refunded.

If the Fund clearly contained sufficient funds to provide for both refund of $22.50 plus interest to each plaintiff and payment of all legitimate claims filed by individuals entitled to recovery from the Fund, we would order immediate refund of the $22.50 plus interest to each plaintiff. But, at this juncture, we cannot determine whether the Fund contains enough money to satisfy the claims of both the plaintiffs and those harmed by uninsured motorists. This is so because MVACA's three-year statute of limitations has not yet run and, as a result, many claims have been and still might be filed against the Fund.

Consequently, we must determine which class of claimants, the uninsured motorists or the individuals harmed by uninsured vehicles, has priority in receiving payment from the Fund. We believe the class of individuals intended by the Legislature to be the primary beneficiaries of the Fund must be given priority in recovering from it. Once that class' claims have been entirely paid, the secondary beneficiaries should be entitled to recovery.

We believe the Legislature intended those harmed by uninsured vehicles to be the primary beneficiaries of the Fund. The previously described language of MVACA's title, which states that the act provides for the maintenance of a fund for paying damages for harm caused by certain vehicles, supports that interpretation. MCLA

257.1106(4); MSA 9.2806(4), and MCLA 257.1106(5); MSA 9.2806(5), also support it. They provide:

"Where an amount is paid out of the fund under this section, the secretary is subrogated to the rights of the person to whom the amount is paid and may maintain an action in his own name or in the name of the person against the person responsible for the use or operation of the uninsured motor vehicle.

"Where payment is made under this section, the operator's or chauffeur's license and owner's registration or registrations of the persons to whom the notice was forwarded under this section shall be forthwith suspended by the secretary and shall not be reinstated until such person or persons have:

"(a) Repaid in full to the fund the amount paid out; or

"(b) Commenced installment repayments in accordance with an agreement made with the secretary, and filed proof of financial responsibility until the amount paid out in settlement of the claim by the motor vehicle accident claims fund has been repaid in full."

By imposing a reimbursement requirement, those provisions indicate that uninsured motorists, in actuality, gained no protection from the Fund and, thus, were not intended as the primary beneficiaries of MVACA. They thereby suggest, instead, that those individuals damaged by uninsured vehicles were intended as the major beneficiaries of MVACA.

Case law, too, indicates that individuals harmed by uninsured motorists were intended as the primary beneficiaries of MVACA. *Lisee v Secretary of State*, 388 Mich 32, 44; 199 NW2d 188 (1972), explained:

"The purpose of the Legislature in passing the Motor Vehicle Accident Claims Act was to compensate those

persons who were injured as a result of the negligent operation of a motor vehicle by an uninsured person."

*Weisberg v Detroit Automobile Inter-Insurance Exchange,* 36 Mich App 513; 194 NW2d 193 (1971), indicates that uninsured motorists were not intended as primary beneficiaries of MVACA. That case held that the owner of an uninsured vehicle injured while a passenger therein cannot recover from the Fund. The *Weisberg* Court explained:

"Analysis of § 6 of the act imparts to us that the Legislature never intended to authorize a monetary recovery by an owner of an uninsured motor vehicle for damages caused by *that same vehicle,* since under § 6(5) the secretary is required—in every case—to suspend the license and registration of such owner until the monies received from the fund are repaid or arrangements therefor are made. It is a logical contradiction that a claimant could first receive payment from the fund and then have his license and registration suspended until he repays the fund." (Emphasis in original.) 36 Mich App at 522.

That Court drew support from the fact that the Ontario courts, in interpreting the Ontario act, which was the model for our own act, concluded that an owner of an uninsured motor vehicle cannot recover from the Ontario fund for damage to his own vehicle.

Thus, because MVACA was primarily oriented toward benefiting those harmed by uninsured vehicles, we believe those individuals' claims must be satisfied before the uninsured motorists receive partial fee refunds.

III.

*Did the trial court err in ordering defendant to*

*segregate and deposit in an escrow account the fee money plus interest at the rate of six percent from October 1, 1973?*

Because the uninsured motorists cannot receive fee refunds unless and until all claims of individuals harmed by uninsured motor vehicles have been satisfied, they do not, at this point, have any right to the monies in the Fund. Consequently, we hold that the trial judge erred in ordering defendant to segregate and deposit the fee money plus interest in an escrow account.

Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion. No costs, a public question being involved.

LESINSKI, C. J., did not participate.