MORRIS & DOHERTY, PC v LOCKWOOD

Docket No. 235451. Submitted August 7, 2003, at Detroit. Decided October 7, 2003, at 9:10 A.M.

The law firm of Morris & Doherty, P.C., brought an action in the Oakland Circuit Court against law professor and inactive State Bar of Michigan member Christina Lockwood, seeking a declaration that the plaintiff is not bound by a referral fee agreement with the defendant to pay the defendant a share of the contingent attorney fee the law firm earned in representing a tort plaintiff whom the defendant referred to the law firm. The defendant counterclaimed for breach of contract. The plaintiff moved for summary disposition on its action for declaratory relief, arguing that the referral fee agreement is unenforceable because inactive state bar members are prohibited from practicing law and that the receipt of a referral fee constitutes the practice of law. The defendant moved for summary disposition on her counterclaim, arguing that she is a lawyer for purposes of the Michigan Rules of Professional Conduct (MRPC) and that the MRPC permits her receipt of a referral fee. The court, Alice L. Gilbert, J., denied the plaintiff's motion and granted the defendant's motion. The plaintiff appealed.

The Court of Appeals *held*:

1. A person engaged in the practice of law in Michigan must be an active member of the state bar, and a person who is not an active member and who engages in the practice of law is subject to discipline or prosecution for unauthorized practice. State Bar Rule (SBR) 3. A person who is not licensed and authorized to practice law shall not, among other things, represent or designate himself as an attorney, counselor, or lawyer. MCL 600.916(1). Under SBR 3 and MCL 600.916(1), a person must be an active member of the state bar in order to engage in the authorized practice of law. "Lawyer," as used in MRPC 1.5(e) and 5.4(a), both of which concern the sharing of legal fees between lawyers, means an active member of the state bar. MRPC 5.4(a) provides that a lawyer or law firm shall not share legal fees with a nonlawyer. In this case, pursuant to statute, State Bar Rule, and Michigan Rules of Professional Conduct, the defendant is a nonlawyer.

2. Contracts that violate ethical rules violate public policy and therefore are unenforceable. In this case, enforcement of the referral fee agreement would require the plaintiff to violate MRPC 5.4(a), which provides that a lawyer or law firm shall not share legal fees with a nonlawyer. Moreover, enforcement of the referral fee agreement would require the plaintiff to violate MRPC 7.2(c), which provides that subject to exceptions that do not apply to this case, a lawyer shall not give anything of value to a person for recommending the lawyer's services.

Reversed and remanded for entry of summary disposition for the plaintiff.

ATTORNEY AND CLIENT — REFERRAL FEES — INACTIVE STATE BAR MEMBERS.

An inactive member of the State Bar of Michigan is a nonlawyer with whom a lawyer or law firm may not share legal fees; an agreement between a lawyer or law firm and an inactive member of the state bar obligating the lawyer or law firm to pay a fee to the inactive state bar member for referring a client to the lawyer or law firm is unenforceable because it violates public policy prohibiting a lawyer or law firm from sharing legal fees with a nonlawyer and prohibiting a lawyer from giving anything of value to a person for recommending the lawyer's services (MCL 600.916[1]; MRPC 1.5[e], 5.4[a]; SBR 3).

*Janis L. Adams* for the plaintiff.

*Jaffe, Raitt, Heuer & Weiss, PC* (by *Jane Derse Quasarano*), for the defendant.

Before: JANSEN, P.J., and NEFF and KELLY, JJ.

JANSEN, P.J. Plaintiff appeals as of right from a circuit court opinion and order denying its motion for summary disposition and granting defendant's motion for summary disposition. We reverse and remand.

I

In 1995, defendant accepted a faculty position at a law school. Defendant subsequently notified the State Bar of Michigan to place her bar membership on "inactive" status. Sometime before November 1997, an

automobile accident injured a third party. A friend of the third party contacted defendant to inquire about the third party's legal options. Defendant referred the third party to plaintiff. Thereafter, plaintiff entered into a contingent fee agreement with the third party. Plaintiff also agreed to provide defendant a referral fee by written confirmation of an oral referral fee agreement. The third party consented to the referral fee agreement. In the spring of 1999, plaintiff settled the third party's case for a sum of $1,920,000. Pursuant to the contingent fee agreement, plaintiff received approximately $623,000 in attorney fees. Consequently, defendant asserted that she was entitled to a referral fee of approximately $207,666.

In February 2000, plaintiff filed a complaint for declaratory relief, which acknowledged the existence of the referral fee agreement but alleged that plaintiff subsequently learned that defendant's membership in the State Bar of Michigan was placed on "inactive status." As such, the complaint requested a ruling regarding plaintiff's obligation to pay defendant the referral fee. Defendant filed an answer to plaintiff's complaint and also filed a counterclaim alleging that plaintiff was liable for breach of contract because defendant did not receive the referral fee.[1]

In November 2000, plaintiff filed a motion for summary disposition, arguing that the State Bar of Michigan and the Michigan Legislature prohibit "inactive" members of the state bar from practicing law and that

---

[1] The third party (the client) filed a motion to intervene on October 17, 2000. The motion indicated that the third party believed that it was entitled to defendant's "referral fee," in the event that the circuit court refused to enforce the agreement between plaintiff and defendant. However, the circuit court file is devoid of further documentation regarding the motion.

the receipt of a referral fee is considered the practice of law. As an ancillary argument, plaintiff contended that defendant's inability to practice law constituted a conflict of interest with the third party, and that public policy required the circuit court to void the referral fee agreement ab initio. Defendant also filed a motion for summary disposition, arguing that the Michigan Rules of Professional Conduct (MRPC) permit her to receive the referral fee because she is a "lawyer" entitled to receive fees, despite her "inactive" bar membership status.

The circuit court issued an opinion and order denying plaintiff's motion for summary disposition with regard to its request for declaratory relief and granting defendant's motion for summary disposition regarding breach of contract. Specifically, the circuit court determined that the term "lawyer," as used in MRPC 1.5(e), encompassed all people licensed to practice law, and not solely those with "active" bar memberships. Thus, the circuit court determined, MRPC 1.5(e) permitted the disputed referral fee arrangement. In addition, the circuit court determined that the practice of law does not include referrals.

II

On appeal, a circuit court's decision on a motion for summary disposition is reviewed de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003); *AFSCME v Detroit*, 252 Mich App 293, 304; 652 NW2d 240 (2002). This Court must review the record in the same manner as must the circuit court to determine whether the movant was entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998);

*Michigan Educational Employees Mutual Ins Co v Turow*, 242 Mich App 112, 114-115; 617 NW2d 725 (2000). We must consider the facts in a light most favorable to the nonmoving party. *Dressel, supra.*

The circuit court treated the motions for summary disposition as cross-motions pursuant to MCR 2.116(C)(10). Although defendant's motion was brought pursuant to MCR 2.116(C)(10), plaintiff's motion was brought pursuant to MCR 2.116(C)(8) and (9). For purposes of our review, this distinction is insignificant because, as noted, our review is de novo. See *Dressel, supra; Beaty v Hertzberg & Golden, PC,* 456 Mich 247, 253; 571 NW2d 716 (1997); *Abela v General Motors Corp,* 257 Mich App 513, 517-518; 669 NW2d 271 (2003). A motion made under MCR 2.116(C)(10)[2] tests the factual support for the claim. *Dressel, supra.* Pursuant to MCR 2.116(C)(8),[3] summary disposition may be granted on the ground that the opposing party has failed to state a claim on which relief can be granted. *Horace v City of Pontiac,* 456 Mich 744, 749; 575 NW2d 762 (1998). MCR 2.116(C)(9) provides for summary disposition where the "opposing party has failed to state a valid defense to the claim asserted against him or her."[4]

---

[2] When deciding a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999).

[3] A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone, and the motion may not be supported with documentary evidence. *Beaudrie v Henderson,* 465 Mich 124, 129; 631 NW2d 308 (2001); *Ormsby v Capital Welding, Inc,* 255 Mich App 165, 172-173; 660 NW2d 730 (2003).

[4] A motion under this subrule is "tested by the pleadings alone, with the court taking all well-pleaded allegations as true and determining whether the defenses are so clearly untenable as a matter of law that no factual

A proper determination of the issues presented in this case requires us to interpret provisions of various Michigan statutes and their interaction with the MRPC and the State Bar Rules of Michigan (SBR). Statutory interpretation is a question of law that is considered de novo on appeal. *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003). With regard to statutory interpretation our Supreme Court stated the following:

> [T]he primary goal of judicial interpretation of statutes is to discern and give effect to the intent of the Legislature. This Court discerns that intent by examining the specific language of a statute. If the language is clear, this Court presumes that the Legislature intended the meaning it has plainly expressed and the statute will be enforced as written. Unless otherwise defined in the statute, or understood to have a technical or peculiar meaning in the law, every word or phrase of a statute will be given its plain and ordinary meaning. [*Federated Publications, Inc v City of Lansing,* 467 Mich 98, 107; 649 NW2d 383 (2002) (citations omitted).]

Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Draprop Corp v Ann Arbor,* 247 Mich App 410, 415; 636 NW2d 787 (2001). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999); *Toth v AutoAlliance Int'l,* 246 Mich App 732, 737; 635 NW2d 62 (2001). The rules of statutory construction merely serve as guides to assist the judiciary in deter-

---

development could possibly deny the plaintiff's right to recovery." *Alcona Co v Wolverine Environmental Production, Inc,* 233 Mich App 238, 245-246; 590 NW2d 586 (1998).

mining intent with a greater degree of certainty. *Title Office, Inc v Van Buren Co Treasurer*, 249 Mich App 322, 326; 643 NW2d 244 (2002).

If reasonable minds can differ about the meaning of a statute, judicial construction is appropriate. *Adrian School Dist v Michigan Pub School Employees' Retirement System*, 458 Mich 326, 332; 582 NW2d 767 (1998); *Ross v Michigan*, 255 Mich App 51, 55; 662 NW2d 36 (2003). The court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose, but should also always use common sense. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *Proudfoot v State Farm Mut Ins Co*, 254 Mich App 702, 708; 658 NW2d 838 (2003). Statutes should be construed to avoid absurd consequences, injustice, or prejudice to the public interest. *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998), overruled in part on other grounds *Rafferty v Markovitz*, 461 Mich 265; 602 NW2d 367 (1999); *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127; 142-143, 150; 662 NW2d 758 (2003).

The Michigan Supreme Court is empowered to "provide for the organization, government, and membership of the state bar of Michigan, and to adopt rules and regulations concerning the conduct and activities of the state bar of Michigan and its members." MCL 600.904. The rules of statutory construction also apply to rules promulgated by the Michigan Supreme Court, such as the Michigan Court Rules (MCR), the MRPC, and the SBR. See, generally, *Grievance Administrator v Underwood*, 462 Mich 188, 193; 612 NW2d 116 (2000); *McAuley, supra* at 518; *ISB Sales*

*Co v Dave's Cakes*, 258 Mich App 520; 672 NW2d 181 (2003).

III

Plaintiff's argue on appeal that a referral fee agreement between an attorney and an inactive attorney is not enforceable. We agree.

MRPC 1.5(e) provides, in relevant part, "A division of a fee between lawyers who are not in the same firm may be made." MRPC 5.4(a) provides, in pertinent part, "A lawyer or law firm shall not share legal fees with a nonlawyer." In addition, this Court, citing MRPC 5.4(a), has stated " 'any fee received by an attorney may not be shared with a non-licensed attorney.' " *Dupree v Malpractice Research, Inc*, 179 Mich App 254, 262; 445 Mich 498 (1989), citing *Polo by Shipley v Gotchel*, 225 NJ Super 429; 542 A2d 947 (1987).

Defendant and the circuit court hinge their entire analysis concerning the validity of the contract on dictionary definitions or loose meanings of the word "lawyer." The circuit court quoted Black's Law Dictionary (4th ed, 1968) to define "lawyer" as "[a] person learned in the law; as an attorney, counsel, or solicitor; a person licensed to practice law." Then, the circuit court concluded, "Given the plain meaning of the word, a lawyer does not need to be an active member of this State. The only requirement is that the person be licensed to practice. Lockwood is undoubtedly licensed to practice law in the State of Michigan. As a result, Lockwood is, by definition, a 'lawyer.' "

Similarly, defendant refers to the "normally understood" meaning of the word "lawyer" in contending

that a law school graduate with ten years of counseling experience who subsequently became a law school professor is a "lawyer," despite her inactive membership in the State Bar of Michigan. Both the circuit court and defendant improperly defined the term "lawyer," as used in MRPC 1.5(e) and 5.4(a), as their definition conflicts with legislative mandate and the intended meaning of the term in these MRPC provisions.

The Legislature's Revised Judicature Act of 1961, MCL 600.101 *et seq.*, contains an entire chapter devoted to "attorneys and counselors." Chapter 9. Specifically, in this Chapter, the Legislature mandates:

> The state bar of Michigan is a public body corporate, the *membership* of which consists of all persons who are now and hereafter *licensed to practice law* in this state. The members of the state bar of Michigan are officers of the courts of this state, and have the exclusive right to designate themselves as "attorneys and counselors," or "attorneys at law," or "lawyers." No person is authorized to practice law in this state unless he complies with the requirements of the supreme court with regard thereto. [MCL 600.901 (emphasis added).]

Under the plain language of the statute, *Federated Publications, Inc, supra* at 107; *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 659; 651 NW2d 458 (2002), a person must have a *license to practice law* in Michigan in order to be a *member* of the State Bar of Michigan. The statute does not define the word "license."

Generally, this Court must apply the "plain and ordinary meaning" to the word "license" because the statute does not provide a definition. *Stone v Michigan*, 467 Mich 288, 291; 651 NW2d 64 (2002). In this endeavor, this Court may refer to a dictionary to

determine the common and ordinary meaning of the word. *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002); *Sanchez v Eagle Alloy Inc*, 254 Mich App 651, 668; 658 NW2d 510 (2003). However, if necessary, this Court must apply a "peculiar and appropriate meaning" if it is a term of art. *Consumers Power Co v Public Service Comm*, 460 Mich 148, 163; 596 NW2d 126 (1999); MCL 8.3a.

First, with regard to word "license," as used in MCL 600.901, one dictionary defines "license," in relevant part, as follows:

> 1. formal permission from a governmental or other constituted authority to do something, as to carry on some business or profession. 2. a certificate, tag, plate, etc., giving proof of such permission[.] 3. permission to do or not to do something. [*Random House Webster's College Dictionary* (1997).]

Second, Michigan courts have previously defined a "license" as "a grant of permission to do something," *Bray v Dep't of State*, 69 Mich App 172, 177; 244 NW2d 619 (1976), as "the permission by competent authority to do an act [that], without such permission, would be illegal," *People v Henderson*, 391 Mich 612, 616; 218 NW2d 2 (1974), or as "a mere privilege to carry on a business subject to the will of the grantor," *Midwest Teen Ctrs, Inc v City of Roseville*, 36 Mich App 627, 632; 193 NW2d 906 (1971). Thus, the word "license" clearly denotes the concept of a grant of present authority to do something. It is patent, then, that in order to practice law in Michigan one must be presently licensed.

With regard to a "license to practice law in Michigan," MCR 9.103(A) provides:

The license to practice law in Michigan is, among other things, a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and counselor and as an officer of the court. It is the duty of every attorney to conduct himself or herself at all times in conformity with standards imposed on members of the bar as a condition of the privilege to practice law. These standards include, but are not limited to, the rules of professional responsibility and the rules of judicial conduct that are adopted by the Supreme Court.[5]

With regard to the meaning of "membership," as used in MCL 600.901, the SBR promulgated by the Michigan Supreme Court provide for four classes of members, namely, active members, inactive members, law student members, and affiliate members. For the purpose of the present case we are only concerned with active and inactive members. But we note the fact that MCL 600.901 envisions a more limited view of the word "membership," when stating it is all persons licensed to practice law in Michigan, because some of the individuals in the classes provided for in the SBR would clearly not be licensed to practice law in this state. SBR 2 provides the following with regard to licensing and bar membership:

Those persons who are licensed to practice law in this state shall constitute the membership of the State Bar of Michigan, subject to the provisions of these rules. . . .[6]

---

[5] The word "attorney" is defined in MCR 9.101(5), albeit in terms of disciplinary proceedings, as "a person regularly licensed or specially admitted to practice law in Michigan."

[6] As previously discussed, the MCL 600.901 meaning of licenses and bar membership is more limited than the four classes of membership provided for in the SBR, but it is clear from this provision that licensed bar membership is also limited by other SBR rules.

SBR 3 provides, in part:

> A person engaged in the practice of law in Michigan must be an active member of the State Bar. In addition to its traditional meaning, the term "person engaged in the practice of law" in this rule includes a person licensed to practice law in Michigan or another jurisdiction and employed in Michigan in the administration of justice or in a position which requires that the person be a law school graduate, but does not include (1) a judicial law clerk who is a member or is seeking to become a member of the bar of another jurisdiction and who does not intend to practice in Michigan after the clerkship ends, or (2) an instructor in law. . . . A person not an active member who engages in the practice of law is subject to discipline or prosecution for unauthorized practice. . . . An active member may request an inactive classification.

Defendant was on the "inactive" list of the state bar. It is axiomatic that "a lawyer on the inactive list of the State Bar of Michigan has no right to engage in the practice of law," *Ayres v Hadaway*, 303 Mich 589, 598; 6 NW2d 905 (1942), and, in fact, is "prohibit[ed] . . . from practicing law," *id.* at 596. All of which is also detailed in the SBR provisions stated above. Thus, as an "inactive" member of the bar, defendant did not have the privilege or the permission to presently practice law in Michigan. As such, defendant was not a "member" of the State Bar of Michigan presently licensed to practice law, for purposes of MCL 600.901, during the time relevant to the contract. The State Bar of Michigan "membership" that is referred to in MCL 600.901 appears to be active membership in the State Bar of Michigan.

As previously noted, the Legislature clearly mandates that "members of the state bar of Michigan . . . have the *exclusive right* to designate themselves as

'attorneys and counselors,' or 'attorneys at law,' or 'lawyers.'" MCL 600.901 (emphasis added). The fact that this only includes active members of the state bar is further supported by MCL 600.916(1), which provides:

> *A person shall not* practice law or engage in the law business, shall not in any manner whatsoever *lead others to believe that he or she is authorized to practice* law or to engage in the law business, and *shall not in any manner whatsoever represent or designate himself or herself as an attorney and counselor, attorney at law, or lawyer, unless the person is regularly licensed and authorized to practice law in this state.* A person who violates this section is guilty of contempt of the supreme court and of the circuit court of the county in which the violation occurred, and upon conviction is punishable as provided by law. This section does not apply to a person who is duly licensed and authorized to practice law in another state while temporarily in this state and engaged in a particular matter. [Emphasis added.]

It naturally follows, then, that the law prohibited defendant from suggesting that she was an attorney, lawyer, etc.

MCL 600.916(1), which provides that a person shall not represent or designate himself or herself as a lawyer when they are not "authorized to practice law in this state," appears to clearly coincide with the SBR 3 provision stating that when an inactive member practices law it is considered "unauthorized practice." Defendant was not a member of the state bar who was entitled to represent or designate herself as a lawyer because her "inactive" status deprived her of a "license" or privilege to practice law in Michigan and she was not authorized to practice law. Thus, defen-

dant was clearly prohibited from designating herself as an attorney, lawyer, etc.

We recognize the Supreme Court's power to provide for the organization of the state bar, MCL 600.904, but the issue in this case conflicts with a legislative mandate, which is in no way contradicts the power provided to the Supreme Court, nor does it contradict the MRPC or the SBR. Throughout the MRPC a "lawyer" is referred to as someone representing clients, which supports the contention that a "lawyer" in Michigan is an active member of the State Bar of Michigan, because an inactive member clearly cannot represent clients. See, generally, MRPC 1.1 through 8.5. Further, the clear intent of our Supreme Court in promulgating MRPC 1.5 and 5.4 was to avoid potential conflicts of interests such as those that would require a lawyer to share legal fees with an individual who is not a lawyer. See Comment to MRPC 5.4 ("These limitations are to protect the lawyer's professional independence of judgment."); *Underwood, supra* at 193; *McAuley, supra* at 518; *ISB Sales Co, supra;* see also *Evans & Luptak, PLC v Lizza,* 251 Mich App 187, 197-203; 650 NW2d 364 (2002) (discussing MRPC 1.5[e] and the importance of the lawyer's fiduciary duty to the client and the problems when a conflict of interest exists). In addition, as previously noted, this Court has stated that "any fee received by an attorney may not be shared with a non-licensed attorney." *Dupree, supra* at 262, citing MRPC 5.4(a). We find that reasonably construing the intent and the purpose of MRPC 1.5(e) and 5.4(a), a fee received by a "lawyer" should not be shared with an individual who has been placed on "inactive" bar status before making the referral, and, as such, an individual on

"inactive" bar status is considered a "nonlawyer" for the purposes of MRPC 5.4(a). See *Draprop Corp*, *supra* at 415.

The circuit court's method of defining the word "lawyer" must fail as it is contrary to the clear intentions of the Legislature and the intended use of the word in MRPC 1.5(e) and 5.4(a). Likewise, defendant's definition of the word "lawyer" is not correct, as it is contrary to the clear intent of the Legislature and the intended use of the word in MRPC 1.5(e) and 5.4(a).

Defendant contends that the common and ordinary meaning of the word "lawyer" includes experienced, yet not licensed, law professors. Yet, one dictionary defines "lawyer" as "a person whose profession is to represent clients in a court of law or to advise or act for them in other legal matters." *Random House Webster's College Dictionary* (1997). It is clear that defendant could not represent, advise, or act for anyone, let alone "clients." In addition, defendant's reference to the commentary to MRPC 1.0 to demonstrate that she was a "lawyer" does not support her argument. The commentary to MRPC 1.0 further provides support that the term "lawyer" as used in the MRPC requires active state bar membership, as it states:

> A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.

Defendant then contends that she was a "lawyer" because, as a law professor, she had a "special responsibility for the quality of justice."

Interestingly, defendant ignores that the commentary demonstrates that a lawyer is three things: a rep-

resentative of clients, an officer of the legal system, *and* a public citizen having special responsibility for the quality of justice. Clearly, defendant could not have legally represented clients. Moreover, defendant's assertion that law professors have special responsibilities for the quality of justice and, therefore, are "lawyers" demonstrates the argument's absurdity. Under defendant's analysis, police officers, legislators, and even courtroom news reporters are "lawyers" because of their special responsibilities relating to the quality of justice. In sum, defendant's reasoning supporting her assertion that she was a "lawyer," within the meaning of the MRPC, must fail, because it is contrary to the mandate of the Legislature and the intended use of the word "lawyer" in MRPC 1.5(e) and 5.4(a). Defendant may not designate or represent herself as a "lawyer," nor may courts designate her as a "lawyer," when she is not currently licensed to practice law, albeit because she is on "inactive" status. Any other reading of the statute, MCL 600.916(1), and the applicable rules promulgated by our Supreme Court, in particular MRPC 1.5(e) and 5.4(a), would produce absurd consequences. See *McAuley, supra* at 518.[7]

---

[7] We note that other states have defined the term "lawyer" in terms of lawyer-client privilege to mean only persons authorized to practice law; one, in particular, provides that " 'lawyer' means a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." California Evidence Code, § 950; see also Louisiana Code of Evidence, Art 506(A)(3); Kan Stat Ann 60-426(c)(3) (defining "lawyer" for purpose of privilege nearly identical to the California definition). But we also note that in *People v Pubrat*, 451 Mich 589, 594-595; 548 NW2d 595 (1996), our Supreme Court stated:

A suspended attorney is an attorney who has been suspended from the practice of law, but is still an attorney. A person who becomes an attorney remains an attorney until formally disbarred

While it is clear that the circuit court erred in its method of defining the term "lawyer," with regard to the MRPC and fee splitting, we continue our analysis to determine whether the contract between the parties is void as a matter of public policy. Such an analysis would be prudent and in the interest of judicial economy because the issue is one of law and the lower court record provides the necessary facts. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

Although, as a general rule, courts must provide competent parties the "utmost liberty" to engage in contractual relations, *Terrien v Zwitt*, 467 Mich 56, 71; 648 NW2d 602 (2002), a contract is valid only if it involves "a proper subject matter." *Thomas v Leja*, 187 Mich App 418, 422; 468 NW2d 58 (1991), citing *Detroit Trust Co v Struggles*, 289 Mich 595; 286 NW 844 (1939). A proposed contract is concerned with a proper subject matter only if the contract performance requirements are not *contrary to public policy*. *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 383-384; 525 NW2d 891 (1994). Courts must pro-

---

or otherwise permanently separated from the bar. A suspension does not alter the formal status as an attorney.

However, we do not think that this definition of attorney is applicable in the present case, as the Supreme Court addressed whether disciplinary action affected an individual's "fitness to practice law" for purpose of ineffective assistance of counsel, rather than whether an individual was a "lawyer" or "nonlawyer" within the meaning of MRPC 1.5 and 5.4. See *Pubrat, supra* at 597-599. The Supreme Court's reasoning in *Pubrat, supra*, was that there is "no necessary correlation between disciplinary action and an attorney's ability to practice law." *Id.* at 597. This is clearly different than the purpose behind MRPC 1.5 and 5.4, which is noted in the comment to MRPC 5.4 as, "These limitations are to protect the lawyer's professional independence of judgment." See also *Evans & Luptak, PLC, supra* (noting MRPC 1.5[e] and the importance of avoiding a conflict of interest when a referral fee agreement exists).

ceed with caution in determining what exactly constitutes Michigan's "public policy," and not merely impose its belief of what public policy should be. In other words, Michigan's "public policy" must be clearly apparent in "our state and federal constitutions, our statutes, and the common law," *Terrien, supra* at 67, as well as our "administrative rules and regulations, and public rules of professional conduct," *id.* at 67 n 11.

A December 3, 1997, letter from plaintiff to defendant sets forth the terms of the contract at issue between the parties. In relevant part, the letter states:

> This will confirm that you [i.e., defendant] referred Rajab and Kris Nedam [i.e., third party] to this [i.e., plaintiff's] office relative to the injuries Rajab sustained in a motor vehicle collision which occurred on or about November 15, 1997. This will further confirm that we will pay a referral fee equal to 1/3 of the attorney fee realized in this matter.

Paul F. Doherty, a member of plaintiff law firm, signed the letter.

There is at least one statutory provision that is relevant to the issue whether the contract contradicts the law. Specifically, the Legislature mandates that "[a] person shall not practice law or engage in the law business . . . unless the person is regularly licensed and authorized to practice law in this state." MCL 600.916(1). As discussed earlier, defendant was neither presently licensed nor authorized to practice law, let alone "regularly licensed." See MCL 600.916(1); SBR 3. Thus, the statute, MCL 600.916(1), prohibited defendant from practicing law or engaging in the law business.

The issue then becomes what actions constitute the "practice [of] law" or "engage[ment] in the law business," and, further, whether the contract required defendant to perform such actions. The Legislature does not define these phrases. However, our Supreme Court recently determined that "a person engages in the practice of law when he counsels or assists another in matters that require the use of legal discretion and profound legal knowledge." *Dressel, supra* at 569.

The contract at issue does not require a performance from defendant that constitutes the "practice of law." Defendant's sole obligation under the terms of the contract is to receive one-third of the attorney fees that plaintiff earned. We do not believe that the solitary act of receiving money, regardless of its connection to the underlying lawsuit, is "the practice of law." Indeed, such an act is quite dissimilar to drafting documents, rendering legal advice, appearing before a judge, or otherwise effecting someone's legal rights. In addition, referring an individual to an attorney and receiving a referral fee does not require defendant to assist "in matters that require the use of legal discretion and profound legal knowledge." *Dressel, supra* at 569. Stated in the most simple terms, the protection of the public does not require this Court to place the act of receiving money solely in the hands of licensed attorneys. Accordingly, the contract at issue does not require defendant to engage in the "practice of law."

Next, we consider whether the contract requires defendant to "engage in the law business." Although the exact meaning of this phrase has not been jurisprudentially determined, it still has meaning. It is an

axiomatic principle of statutory construction that courts must give effect to each phrase of a statutory provision. *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 545; 656 NW2d 215 (2002), quoting *Pohutski v Allen Park*, 465 Mich 675, 683-684; 641 NW2d 219 (2002). In addition, the Legislature's separation in MCL 600.916(1) of the phrase "practice of law" from the phrase "engage in the law business" with the word "or" expresses the Legislature's conceptual separation of the two. Cf. *People v Nickerson*, 227 Mich App 434, 439; 575 NW2d 804 (1998) (requiring courts to give the word "or" its usual meaning, unless "its sense is . . . rendered dubious"); *Root v Ins Co of North America*, 214 Mich App 106, 109; 542 NW2d 318 (1995).

The phrase "engage in the law business" seemingly encompasses actions that are related to commercial activity proximate to legal services. Our Supreme Court in *Dressel, supra*, though not defining the phrase "engage in the law business," did state that "because defendant was not practicing law when it completed the mortgage, it was not engaged in the 'law business.' It is immaterial that it charged a fee for its services. Charging a fee for nonlegal services does not transmogrify those services into the practice of law." *Id.* at 568. In addition, the holding in *Dressel, supra* at 569, provides that because one "did not counsel or assist plaintiffs in matters requiring legal discretion or profound legal knowledge[,] . . . it did not engage in the practice of law and did not violate MCL 450.681."

The issue presented in the present case is different than the issue decided in *Dressel, supra*. In *Dressel, supra*, it was determined that completing standard

mortgage documents was not the practice of law and, therefore, a person charging fees for completing standard mortgage documents could not be engaged in the law business. However, in the present case, although defendant was not practicing law when she made a referral and would not be practicing law in accepting a referral fee, she did refer the case to plaintiff for work that is considered the practice of law, i.e., tort claim representation. As such, the present case is distinguishable from *Dressel, supra,* in that plaintiff may have been engaged in the "law business" even though she was not practicing law. We decline to address the issue at this point, as it is unnecessary to the resolution of the case because public policy voids the contract for other reasons, but note the distinction from *Dressel, supra.*

We find that public policy voids the contract ab initio. The Legislature has chosen to delegate the determination of "public policy" underlying the activities of the State Bar of Michigan to the judiciary. MCL 600.904. This Court has recently held that contracts containing performance requirements that would violate the MRPC are not enforceable because such contracts contradict Michigan's public policy. *Evans & Luptak, PLC, supra* at 189-197. Specifically, this Court provided:

> [I]t is clear the Supreme Court agreed with the fundamental principle that contracts that violate our ethical rules violate our public policy and therefore are unenforceable. . . . Further, although *Abrams* [*v Susan Feldstein, PC,* 456 Mich 867 (1997)] construed our former Code of Professional Conduct rather than our current Rules of Professional Conduct, the logic remains that "[i]t would be absurd if an attorney were allowed to enforce an unethical fee agreement through court action, even though the attorney potentially

is subject to professional discipline for entering into the agreement." *Abrams, supra.* [*Evans & Luptak, PLC, supra* at 196.]

Enforcement of the contract would require plaintiff to violate the MRPC's prohibition against sharing legal fees with those not permitted to practice law, i.e., inactive members of the state bar. As stated before, MRPC 5.4(a) mandates that "[a] lawyer or law firm shall not share legal fees with a nonlawyer." Plaintiff is a law firm. Contrary to defendant's assertions, defendant is categorized a "nonlawyer," within the meaning intended in MRPC 5.4(a), and as mandated by the Legislature. The contract requires plaintiff to transfer one-third of its earned legal fees to defendant. This would require the sharing of legal fees with a "nonlawyer." Furthermore, defendant does not fall within the exceptions provided in MRPC 5.4 or the exception noted in the Comment to MRPC 5.4 because defendant is not similar to "an organization such as a union-sponsored prepaid legal services plan." Thus, if enforced, the performance requirements of the contract would violate MRPC 5.4(a).[8] Consequently, the contract is unenforceable as per-

---

[8] We note that in *Whishnefsky v Riley and Fanelli, PC*, 799 A2d 827, 829 (Pa Super, 2002), the Pennsylvania Superior Court, persuasively, discussed the purpose of a similar rule prohibiting splitting of fees between a lawyer and a nonlawyer as follows:

> The purposes of "this legal mandate," as our Supreme Court observes, are "to maintain a lawyer's independent professional judgment, unhampered by monetary obligation to a party other than his client," and "to protect the Bar from the unauthorized practice of law by persons the system does not recognize as presently licensed to practice." *Disciplinary Counsel v Jackson*, 536 Pa 26, 637 A2d 615, 618 (Pa 1994) (quoting Report and Recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, at 17).

formance of the contract would violate Michigan's public policy. See *Evans & Luptak, PLC, supra* at 196.

In addition, enforcement of the contract would require plaintiff to violate the MRPC's broad prohibition against paying for referrals. MRPC 7.2(c) states that "[a] lawyer shall not give anything of value to a person for recommending the lawyer's services." The members of plaintiff are lawyers. One-third of plaintiff's earned attorney fees are considered something of value. Defendant is a person. Defendant's consideration was her referral, i.e., recommendation, of the third party to plaintiff. Therefore, the contract's requirement that plaintiff provide defendant with a "referral fee" is contrary to Rule 7.2(c). As such, the performance of the contract would violate Michigan's public policy and, thus, is unenforceable. See *Evans & Luptak, PLC, supra* at 196.

For the above stated reasons, the referral fee contract between plaintiff and defendant requires performance that contradicts provisions of the MRPC. Thus, as a matter of public policy, the contract is void ab initio. See *Evans & Luptak, PLC, supra* at 196.

As a final matter, defendant's discussion of, and comparison to, various state bar ethical opinions is not persuasive with regard to the issues presented in the present case. Principally, ethical opinions clearly are not binding on this Court and provide little, if any, precedential value, especially when statutory and judicial rules are completely dispositive with regard

Similarly, in the present case and with the MRPC 5.4, the purpose is to maintain a lawyer's independent professional judgment unhampered by a monetary obligation to a nonlawyer, not presently licensed, that is not the client being represented. See, generally, comment to MRPC 5.4.

to the issues that the parties present. *Watts v Polaczyk*, 242 Mich App 600, 607; 619 NW2d 714 (2000). Plaintiff's citation of State Bar of Michigan Ethics Opinion RI-199 (March 23, 1994) for support is not persuasive.[9] Likewise, State Bar of Michigan Ethics Opinion RI-30 (September 15, 1989) is immaterial with regard to the present case.[10] Finally, defendant's reference to *Benjamin v Koeppel*, 85 NY2d 549; 650 NE2d 829; 626 NYS2d 982 (1995), is also inconsequential with regard to the present case.[11]

---

[9] RI-199 concluded that a licensed Michigan attorney may ethically, under MRPC 1.5(e), pay a referral fee to an out-of-state lawyer because an out-of-state attorney was a "lawyer" for purposes of the rule, despite the attorney's inability to practice law in Michigan. This opinion is not persuasive for several reasons. First, the out-of-state attorney in the opinion was legally able to practice *somewhere*. In the present case, defendant was not legally able to practice anywhere. The assertion that defendant could have so practiced, simply by becoming an "active" member, does not eliminate the fact that she did not. Second, the opinion's reasoning hinged on an attorney's "incentive" to assist "clients." In this case, defendant could not legally have had clients and, thus, the same incentive does not exist.

[10] RI-30 concluded that an attorney who referred a client to another, for a fee, may ethically accept that fee despite the subsequent suspension of that attorney. The author of the opinion reasoned that "the referring lawyer fully performed all responsibilities and duties under the referral agreement prior to the effective date of the suspension." RI-30. The facts of the present case are clearly distinguishable because defendant was not licensed to practice law when she made the referral.

[11] The Court of Appeals of New York, in *Benjamin, supra* at 553, held that an attorney who did not register with the Office of Court Administration (OCA) could recover fees that the attorney earned. The court reasoned that an attorney's ability to lawfully practice was not dependent on registration with the OCA. *Id.* at 553. The facts of the present case are not analogous as defendant was an "inactive" member of the State Bar of Michigan, and in critical distinction to *Benjamin, supra,* defendant could not lawfully practice law. Thus, it is not correct for defendant to compare registration with the New York OCA with Michigan's requirement of "active" membership. Further, we are not bound by the decisions of our sister states. *Farm Bureau Mut Ins Co v Buckallew*, 246 Mich App 607, 614 n 6; 633 NW2d 473 (2001), citing *Continental Cablevision of Michigan, Inc v City of Roseville*, 430 Mich 727, 741 n 16; 425 NW2d 53 (1988).

IV

In sum, the contract at issue is not enforceable. The circuit court improperly determined that defendant was a "lawyer," contrary to the clear mandate of the Legislature and the intended meaning of the term as used in MRPC 1.5(e) and 5.4(a). The contract contains performance requirements that, if completed, would violate statutory provisions and the MRPC. Thus, the contract does not contain a proper subject matter, and is not enforceable because it violates Michigan's public policy. See *Evans & Luptak, PLC, supra* at 196; *Thomas, supra* at 422, citing *Detroit Trust Co, supra.* Consequently, the circuit court erred by enforcing the contract and denying plaintiff's request to declare the contract void ab initio as a matter of public policy.[12]

We reverse the circuit court's opinion and order granting defendant's motion for summary disposition and remand with instructions to enter summary disposition in favor of plaintiff.

---

[12] Plaintiff's claim concerning a purported issue of material fact is made moot by our resolution of the case. The disposition of this case renders analysis of this issue inconsequential to the parties involved in the present case.