FINE ARTS CORP. v. KUCHINS FURNITURE MANFG. CO.

1. LANDLORD AND TENANT—STATUTE OF FRAUDS—RATIFICATION.
   Lease *held*, valid, where executed by lessee's agent who had written authority to do so and by lessor's agent whose act in doing so was ratified in writing by lessor and lease was subsequently ratified by lessee (3 Comp. Laws 1929, § 13411).

2. CONTRACTS—RATIFICATION.
   Contract may not be legalized by ratification, where it is prohibited by law under criminal penalty or as a matter of general public policy or the right to make it is specifically denied.

3. FRAUDS, STATUTE OF—LEASE—PRINCIPAL AND AGENT.
   Execution of lease of realty for period of years by lessor's agent, not previously duly authorized to do so in writing, may be ratified by observance of statutory requirements after lease has ceased to be wholly executory so as to hold lessee on his agreement to pay rent (3 Comp. Laws 1929, § 13411).

4. LANDLORD AND TENANT—MERE WORDS NOT AN EVICTION.
   Mere words, no matter how offensive, and unwarranted demands cannot constitute an eviction, because the interference with the beneficial enjoyment of the premises must be something of a more permanent nature than a personal altercation between landlord and tenant or the making of a demand to which the tenant is not bound to accede.

5. SAME—EVICTION.
   In action by lessor against furniture manufacturer who leased space for exhibition purposes, record *held*, insufficient to sustain lessee's claim of eviction, where, after a single refusal to accept replacement of goods subject to lien for rent past due, defendant made no claim of eviction upon demand for rent nor in pleadings in action brought to recover it.

6. SAME—CONVERSION OF FURNITURE.
   In action for rent by lessor of space to furniture manufacturer for exhibition purposes, claim of credit for conversion of furniture *held*, not sustained where, after incident alleged to amount to conversion, undisputed acts show neither party so considered it.

7. SAME—REDUCTIONS IN RENT—EVIDENCE.

    Lessee *held,* entitled to 33⅓ per cent. reduction in rent from amount stated in lease where such concession was made in written statements sent lessee before and after commencement of suit for rent and which was also made to other tenants; the written statements being the best.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 10, 1934. (Docket No. 48, Calendar No. 37,922.) Decided December 10, 1934.

Assumpsit by Fine Arts Corporation, a Michigan corporation, against Kuchins Furniture Manufacturing Company, a corporation, for rent due on a lease. Set-off by defendant. Judgment for plaintiff. Plaintiff appeals. Judgment set aside and cause remanded for entry of judgment for plaintiff in increased amount.

*Butterfield, Keeney & Amberg,* and *Warner, Norcross & Judd,* for plaintiff.

*Glocheski & Glocheski* (*Wencel Milanowski,* of counsel), for defendant.

FEAD, J. Plaintiff had judgment of $58.66 for rent under a lease, on trial before the court without a jury, and it appeals.

G. A. Hendricks originally owned the building. In March, 1932, he conveyed to Fine Arts Corporation. June 1, 1933, a receiver of rents and profits was appointed. The receiver brought this suit, but was afterward discharged and, by stipulation, plaintiff substituted for him.

September 10, 1928, Hendricks and defendant entered into a lease by which Hendricks let to defendant, for exhibition purposes, a room in the Fine Arts Furniture Exhibition Building in Grand Rapids, from June 1, 1928, to December 1, 1935, at

annual rental of $5,000, payable semi-annually. The lease was signed for Hendricks by Rowlette, his manager, and for defendant by Jason, its manager, who was also a director. A rider, executed for Hendricks by Rowlette and for defendant by Kuchins, its president, was attached to the lease and provided for an option to defendant to transfer its exhibit to a proposed new building on certain conditions. Kuchins had written authority to execute instruments for defendant.

Defendant took possession and paid rent to December 1, 1931. It then became in default. In March, 1932, Hendricks wrote defendant asking for the rent, acknowledging that Rowlette had signed the lease for and in his behalf and stating it would be respected and would function in the future as it had in the past.

In the fall, defendant attempted cancellation of the lease because of its financial condition. Cancellation was rejected and conferences ensued, in the course of which letters were written between defendant and Hendricks' counsel, some of which were signed by Kuchins for defendant. Out of them came an agreement that the rent for 1932 should be paid in instalments and the future rent, beginning December 1, 1932, should be paid monthly. The agreement was evidenced by a letter addressed to defendant by plaintiff's attorney, upon which Kuchins wrote "O.K." and his name. It was also agreed that all rent should be reduced 33⅓ per cent. for prompt payment. Only one month's rent was paid, part of it remitted by letter signed by Kuchins. It was also agreed that defendant's furniture then in the building should remain "as a guarantee against the indebtedness," defendant to have the privilege of removing furniture sold upon replacing it with goods

of equal value and plaintiff to have the option of selling the furniture in full settlement of the rent due for the year 1932.

Shortly after the January furniture show, defendant sent a truck with a table and four chairs, worth $23.75, to replace a china closet worth $25, which had been sold. Rowlette refused to let the driver make the substitution. The driver testified that Rowlette said defendant was not paying its rent and had no business there, and that the replacement furniture was "junk." Rowlette telephoned Jason and told him defendant could not move anything out of the space.

Thereafter defendant made an inventory of the property in the room at $3,070. A commission salesman, on authority of defendant's office manager, took prospective customers to the room for the purpose of selling them defendant's furniture, although Jason had told the salesman that defendant was not going to use the space any longer. At least one sale was made by someone and the goods withdrawn and delivered.

In 1933 controversy arose between Hendricks and the bondholders as to rent and, in January and May, he wrote defendant demanding that the rents be paid to him. On June 14th defendant's attorneys wrote the receiver, setting up that defendant had been obliged to cancel the lease because of its financial condition, the parties had agreed that defendant was to exhibit during January upon payment of one month's rent, the indebtedness for 1932 was to remain in abeyance, the furniture was subject to replacement privilege, and the landlord had the option of selling the furniture in full settlement of 1932 rent, and asked for a six-months' moratorium.

This action is for rent for 1932 and to December 1, 1933, at $5,000 per year. Defendant claims the lease

was void under the statute of frauds (3 Comp. Laws 1929, § 13411); that by Rowlette's refusal to permit replacement defendant had been evicted; and the refusal was a conversion of the furniture by plaintiff entitling defendant to credit for its value. The court sustained the claim of eviction, allowed rent at the reduced price, and gave defendant credit for value of the furniture.

Was the lease void under the statute of frauds, 3 Comp. Laws 1929, § 13411, for want of execution by agents authorized in writing?

Rowlette's employment as manager for Hendricks was evidenced by two letters written in 1923 and 1925, in which, however, authority to execute a lease is not entirely clear. If the lease were wholly executory, it might be a grave question whether Rowlette was properly authorized. But we pass the question because the letter was ratified by both parties. Hendricks adopted the lease and Rowlette's signature as his agent by his letter of March, 1932, and further confirmed it by his letters in 1933 demanding rent. Defendant ratified the lease by the rider when the lease was executed, by taking and remaining in possession thereunder, and by letters signed by its president during negotiations for adjustment.

Defendant, however, contends the lease was a nullity and could not be ratified to sustain an action at law. Its claim is supported by language in *Jefferson* v. *Kern,* 219 Mich. 294, where the claimed ratification was insufficient and the contract wholly executory. See, also, *Wilkinson* v. *Heavenrich,* 58 Mich. 574 (55 Am. Rep. 708); *Chesebrough* v. *Pingree,* 72 Mich. 438 (1 L. R. A. 529); *Baldwin* v. *Schiappacasse,* 109 Mich. 170. On the other hand, it was held in *Hammond* v. *Hannin,* 21 Mich. 374 (4 Am. Rep. 490), that ratification may be oral if the

contract is not under seal. And in other cases, under varying circumstance's, ratification has been sustained. *Palmer* v. *Williams,* 24 Mich. 328; *Stuart* v. *Mattern,* 141 Mich. 686; *Carnahan* v. *M. J. & B. M. Buck Co.,* 250 Mich. 198; 27 C. J. p. 298.

We think the purpose of the statute is important in determining whether certain contracts may be ratified. If the law prohibits a contract under criminal penalty or as a matter of general public policy or specifically denies the right to make it, of course it could not be legalized by ratification. But where the purpose of the statute is civil, to prevent fraud, to fix the rights only of contracting parties, and the invalidity is not in the subject matter of the agreement but merely in the manner of execution, there is no good reason for denying right of ratification through subsequent observance of the statutory requirements. If, finally, the contract is adopted or the authority of the agent confirmed, in writing, the statutory requirements are observed and ratification amounts to no more than completing execution of the contract which before had not been fully executed.

We hold that the instant lease was ratified by both parties and was valid.

Was defendant evicted from the premises? In *Grinnell Bros.* v. *Asiuliewicz,* 241 Mich. 186, cited by defendant, eviction was not involved. In *Lawrence* v. *Rapaport,* 213 Mich. 358, in connection with the claim that interference with beneficial use worked an eviction, Mr. Justice Wiest said:

"Mere words, no matter how offensive, and unwarranted demands cannot constitute an eviction, because the interference with the beneficial enjoyment of premises must be something of a more permanent nature than a personal altercation between

landlord and tenant or the making of a demand that the tenant is not obliged to accede to.''

The record discloses no act of Rowlette denying defendant use of the premises except in connection with the single trivial incident of the replacement of goods and in which Rowlette was technically right because of the difference in value of the furniture. Defendant did not deem it had been evicted because it made at least one withdrawal and delivery of goods thereafter, made no claim of eviction to Hendricks in answer to his demands for rent, its attorneys did not make claim of eviction in their letter to the receiver and defendant did not plead eviction in this case. We cannot find that an eviction occurred.

Is defendant entitled to credit against rent for the furniture left on the premises under the theory that Rowlette converted the goods in refusing to permit replacement?

Jason claims Rowlette's language was general in denying the right to withdraw any furniture. It does not appear that the parties discussed anything except the single attempted substitution. Where parties are quarreling about a particular thing, their language ordinarily has reference to the thing and it should not be given a scope not in the mind of either. The fact that defendant knew its salesman was attempting to sell its furniture, and thereafter withdrew goods without question or objection from Rowlette, is persuasive that neither party considered the incident a conversion. It is also significant that defendant's attorneys, in their letter to the receiver, made no claim of conversion but treated the option of plaintiff to sell for the rent as continuing. Undisputed acts committed and instruments written contemporaneously with or in recital of an event ought to be of more force than oral claims first made after suit is begun. We fail to find conversion.

Is defendant entitled to the 33⅓ per cent. reduction in rent?

Plaintiff had made a like concession to all other tenants for prompt payment, "but we did not enforce the promptness very much." This suit was commenced July 11, 1933. Plaintiff, in June, 1933, and the receiver, in August, sent defendant statements of rent due, with the reduction allowed. The fact that plaintiff "did not enforce the promptness very much," and that the reduction was a general policy, indicates that the talk of prompt payment was not intended to be a strict condition. We think the written statements of rent demanded of defendant the best evidence of the construction, scope and intent of the concession and it should stand.

Judgment will be set aside and the cause remanded for entry of judgment for plaintiff in the sum of $5,833.32, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.