*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0455p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SARAH MELSON,

       *Plaintiff-Appellant,*

    *v.*

PRIME INSURANCE SYNDICATE, INC.,

       *Defendant-Appellee.*

No. 03-1914

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-70546—Bernard A. Friedman, Chief District Judge.

Argued: August 12, 2004

Decided and Filed: November 29, 2005

Before: MOORE and COLE, Circuit Judges; MARBLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** Patrick A. King, FABIAN, SKLAR & KING, Farmington Hills, Michigan, for Appellant. Jeffrey R. Learned, GROTEFELD & DENENBERG, Bingham Farms, Michigan, for Appellee. **ON BRIEF:** Patrick A. King, FABIAN, SKLAR & KING, Farmington Hills, Michigan, for Appellant. Jeffrey R. Learned, GROTEFELD & DENENBERG, Bingham Farms, Michigan, for Appellee.

---

## OPINION

---

     R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant Sarah Melson brought this action against Defendant-Appellee Prime Insurance Syndicate, Inc. ("Prime"), alleging that Prime's decision not to pay her insurance policy's face value for a loss caused by fire damage to Melson's commercial property violated both Michigan state law and the terms of the insurance policy. Melson appealed the district court's grant of summary judgment in favor of Prime, contending that the district court's judgment was erroneous because: (1) Prime's Coinsurance Provision – upon which it relied to deny Melson full coverage – is invalid, as against Michigan public policy; and (2) the Coinsurance Provision is ambiguous, and thus fraudulently misrepresents the true nature of the Policy. On appeal, we held that the Coinsurance Provision provided Melson with accurate notice

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

as to the conditions of the Policy's coverage.  We were unable to determine with certainty, however, whether the Coinsurance Provision violated Michigan public policy, and thus sought guidance from the Michigan Supreme Court in the form of two certified questions.[1]  That court declined to answer our questions.  *In re Certified Questions from the United States Court of Appeals for the Sixth Circuit*, 696 N.W.2d 687 (Mich. 2005).  This opinion follows.

## I. BACKGROUND

On September 28, 1995, Melson purchased two adjoining properties for commercial use in Detroit, Michigan, located at 20338-54 and 20426-40 W. Seven Mile Road, respectively.  The total purchase price for both properties was $250,000, which included the land and all other elements of the real estate.

On October 12, 1995, Melson insured both properties with Prime.  The total insurance coverage for both buildings was $480,000 – including $185,000 for the property at issue.  According to the insurance policy ("Policy"), Prime was required to pay the full amount of actual loss in the event of a fire, subject to certain limitations and conditions.  One of these conditions was the imposition of a coinsurance penalty if it were determined that Melson had underinsured the property.  Attached to the policy under a provision titled "Additional Conditions," the Coinsurance Provision states:[2]  "We will not pay the full amount of any loss if the replacement cost value of Covered Property at the time of the loss times the Coinsurance Percentage shown for it in the Declarations is greater than the limit for the property."  The Policy's Commercial Property Coverage Declarations page ("Declarations page") listed a coinsurance amount of 80%.  This required Melson to insure the property at 80% of its replacement cost value to avoid triggering the coinsurance penalty.

On January 16, 2001, a fire damaged the building located at 20426-40 W. Seven Mile Road.  Each party agrees that the actual cash value of the loss exceeded the total coverage of $185,000.[3]  Prime calculated the actual cash value of the loss at $255,778.28.  Without a Coinsurance Provision, Prime would have been required to pay the policy's full face value – $185,000.  Here, however, Prime contends that because the Policy imposed a coinsurance requirement, it is not responsible for indemnifying Melson for the policy's full face value.  Prime argues that it is only required to cover a percentage of that loss, because Melson failed to meet the coinsurance requirement.  Specifically, Prime contends that because Melson insured less than 80% of the building's total replacement cost with them, it is only responsible for the proportion of the loss equal to the proportion that was "adequately insured."

Prime determined that the full replacement cost of the building was $468,347.  Applying the Coinsurance Provision, Prime determined that the replacement cost value ($468,347) multiplied by the Coinsurance Percentage (.80) required Melson to have insured the property for $374,677.60, rather than $185,000.  Prime then determined that it would only pay a sum equal to the proportion

---

[1]Did the enactment of Public Act 1990, No. 305 § 2, coupled with the rescission of M.C.L. § 500.2840 (repealed 1990), effect the prohibition of coinsurance clauses in insurance policies in the State of Michigan?

Does the rescission of M.C.L. § 500.2832 (repealed 1990) and its replacement by M.C.L. § 500.2833 (2003) constitute a prohibition of coinsurance clauses?

[2]A Coinsurance Percentage is the proportion of insurance – as measured against replacement cost or actual cost – that an insured is required to maintain to avoid having a coinsurance penalty imposed.  Here, Melson was required to maintain the policy's face value at 80% of the replacement cost of the property.

[3]Actual cash value is the replacement cost minus normal depreciation.  BLACK'S LAW DICTIONARY 1549 (7th ed. 1999).

of insurance that Melson had versus what she was required to have. That is, Prime agreed to pay the equivalent proportion of $185,000/$374,678 of whatever loss was incurred.

Prime used the following formula to calculate its payment:

(1) multiply the replacement cost value of the covered property by the Coinsurance Percentage

($468,347 x .8) = $374,677.60;

(2) divide the limit of insurance of the property by the figure determined in step (1)

(185,000/374,677.60) = .4939;

(3) multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2)

$255,677.28 x .49 = $126,292.53; and

(4) subtract the deductible from the figure determined in step (3)

$126,292.53 - $1,000 = $125,292.53.

Pursuant to these calculations, Prime sent Melson two checks totaling $125,292.53 on April 4, 2001. Melson filed an action in federal district court, alleging that Prime's refusal to pay the full $185,000 was a violation of both the terms of the contract and Michigan state law. The district court granted Prime's motion for summary judgment. Melson appealed, alleging that Prime misrepresented the nature of the policy, that the policy was ambiguous, and that the Coinsurance Provision was contrary to Michigan public policy. Although we affirmed the district court's order on Melson's first two claims, we were unable to determine whether coinsurance clauses violated Michigan public policy. We certified two questions to the Michigan Supreme Court, which declined to provide guidance after determining that it did not have jurisdiction. Our opinion addresses only whether coinsurance clauses violate Michigan public policy.

## II. DISCUSSION

### A. Standard of Review

We review the district court's grant of summary judgment *de novo*. *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, the facts, and any inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. The Public Policy Claim

Melson argues that Prime's Coinsurance Provision is contrary to Michigan public policy for two reasons: (1) the Michigan legislature revoked the statutory authorization permitting inclusion of coinsurance provisions in property policies; and (2) the Michigan legislature requires that property policies pay, at a minimum, actual cash value benefits upon a loss. "When and how state

law applies to a particular case is a matter on which the state supreme court has the last word." *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995). If state law is unsettled, as in this case, we anticipate how the state's supreme court would rule on the issue of state law. *C & H Entertainment, Inc. v. Jefferson County Fiscal Court*, 169 F.3d 1023, 1025 (6th Cir. 1999). In order to determine how the state supreme court would rule, we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently. *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 789 (6th Cir. 1997).

    1.        Michigan Public Policy

With few exceptions, courts have held that "[a]n insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (quoting *Heniser v. Frankenmuth Mut. Ins. Co.,* 534 N.W.2d 502, 505 (Mich. 1995)). Regarding the determination of whether an insurance contract contravenes public policy, the Michigan Supreme Court has stated:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereign to justify the invalidation of a contract as contrary to that policy.

*Terrien v. Zwit*, 648 N.W.2d 602, 609 (Mich. 2002).

First, Melson contends that although coinsurance provisions were permitted in property policies in Michigan pursuant to M.C.L. § 500.2840, the authority of insurers to include such provisions was revoked by Public Act 1990, No. 305, § 2, effective December 14, 1990.[4] In support of her contention that the deletion of § 500.2840 from Michigan's Insurance Code constitutes a prohibition on coinsurance provisions, Melson cites to several cases for the proposition that "[w]here a statute is repealed and another statute is enacted that covers the same subject area . . . a change in wording reflects a legislative intent to change the statute's meaning." *Williams v. Auto Club Group Ins. Co.*, 569 N.W.2d 403, 405 (Mich. Ct. App. 1997). Prime responds that Melson's characterization of the revocation of a permitting statute wrongly suggests that coinsurance clauses are invalid without prior statutory authorization. Second, Prime argues a version of the "dog that didn't bark" maxim of statutory interpretation, which counsels that legislative silence on what would be a fundamental change in the law provides evidence that the legislature did not intend such a change. Here, Prime points to the legislative history of Public Act 1990, No. 305, contending that the legislature's silence on the prohibition of coinsurance provisions – coupled with the overall purpose of the Act – provides ample evidence for rejecting the conclusion that the state sought to prohibit coinsurance provisions when it revoked § 500.2840.

Although the Michigan Supreme Court has not yet addressed whether, after the repeal of § 500.2840, coinsurance provisions remain consistent with Michigan public policy, it is clear that Michigan courts have historically accepted coinsurance provisions. "We dismiss plaintiff's claim that there is something vicious about co-insurance. Its legality is no longer a debatable question. It has been authorized by law for over 40 years." *Masonic Temple Ass'n of Grand Rapids v.*

---

[4]M.C.L. § 500.2840(1) reads:
    Any person may obtain from any insurer authorized to do business within the state of Michigan, a coinsurance clause to be attached to or included in any policy issued by such insurer insuring the interest of the insured in any real or tangible or intangible personal property against direct, indirect or consequential loss of damage, and the insurer shall have the right to issue such coinsurance clause, providing the form of the same has first been approved by the commissioner.

*Michigan*, 36 N.W.2d 317, 320 (Mich. 1949) (citing *Fine Arts Corp. v. Kuchins Furniture Mfg. Co.*, 257 N.W. 822 (Mich. 1934)).

Furthermore, although the Michigan Supreme Court has not addressed this precise issue, a Michigan Court of Appeals has explicitly held that coinsurance provisions continue to be consistent with Michigan public policy despite the repeal of § 500.2840. A decision by the Michigan Court of Appeals is controlling until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise. *Wieczorek v. Volkswagenwerk, A.G.*, 731 F.2d 309, 310 (6th Cir. 1984) (citing *In re Hague*, 315 N.W.2d 524, 532 (Mich. 1982)). Citing *Masonic Temple*, the Michigan Court of Appeals held that coinsurance provisions generally do not violate Michigan public policy. *Royal Property Group v. Prime Ins. Syndicate, Inc.*, --N.W.2d--, 2005 WL 2030918 (Mich. Ct. App. 2005). That court considered an insurance policy nearly identical to the policy at bar; the policy required that the insured maintain insurance sufficient to cover 80% of the replacement cost value in order to receive benefits based upon actual loss. Like Melson, the insured in *Royal Property* was required to act as a coinsurer when it failed to obtain insurance for at least 80% of the replacement cost.

The Michigan court not only held that coinsurance provisions do not violate Michigan public policy as a general rule, it permitted a coinsurance clause that is in all relevant respects identical to the provision at issue. In so holding, that court observed that "nothing has been presented to clearly establish that the instant coinsurance clause transgresses our state and federal constitutions, our statutes, the common law, our administrative rules and regulations, or our public rules of professional conduct." *Royal Property*, at *7. So too here, Melson has presented nothing that clearly establishes that the Coinsurance Provision violates Michigan public policy. Absent a clear indication that coinsurance violates Michigan public policy, this Court cannot rewrite the insurance contract. *Terrien*, 648 N.W.2d at 609.

Melson contends that this Court should not follow *Royal Property*, because the court in that case did not discuss the repeal of § 500.2840. Although Melson contends that the state court did not discuss § 500.2840 because it was unaware of the repeal of the statute, it is at least as plausible that the court considered but rejected the argument Melson forwards here. Even if that court did not consider it, this Court is not convinced that the repeal of § 500.2840 provides an indication that coinsurance violates Michigan public policy so definite that the Michigan Supreme Court would find it sufficient to justify the invalidation of a contract under *Terrien*.

Prime argues persuasively that § 500.2840 did not authorize insurers to include coinsurance provisions, but merely provided structure for a right long recognized by Michigan common law. As discussed *supra*, Michigan courts have recognized the legality of coinsurance provisions as well established. *Masonic Temple,* 36 N.W.2d at 320. In *Cheesebrough v. Home Insurance Co.*, 28 N.W. 110 (Mich. 1886), decided long before any statutory provision regarding coinsurance provisions, the Michigan Supreme Court upheld an insurer's coinsurance provision that required the insured to maintain insurance at 80% of the value of the insured property. There, the Michigan Supreme Court held that:

> [The plaintiff is] bound either to procure from others, or to carry themselves, insurance to the extent, with defendant's policy, of four-fifths of the value of the insured property. The undertaking is positive and unequivocal that they shall keep the property insured to that extent, and that they shall themselves be treated as insurers for all that others do not insure.[5]

---

[5]The policy in *Cheesebrough* provided:
It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that the assured shall maintain insurance on the property, hereby insured by this policy, to the extent

*Id.* at 111.  Although the Michigan legislature certainly could regulate the legality of coinsurance clauses via statute, *Masonic Temple* and *Cheesebrough* suggest that § 500.2840 did not authorize their introduction.  Given that § 500.2840 appears to have structured, rather than created, the long-established practice of including coinsurance provisions in property policies, its deletion neither prohibits such provisions, nor indicates that coinsurance provisions are in conflict with Michigan public policy.

      2.      Actual Cash Benefits

Melson also asserts that the coinsurance clause violates Michigan public policy insofar as coinsurance policies are inconsistent with Michigan statutory law regulating the contents of fire insurance policies.  M.C.L. § 500.2833(1)(a) requires fire insurance policies to pay a minimum of actual cash value upon a loss.  It provides: "Each fire insurance policy issued or delivered in this state shall contain the following provisions:  That the policy shall provide, at a minimum, coverage for actual cash value of the property at the time of the loss, subject to all other provisions contained herein."  § 500.2833(1)(a).  Melson contrasts § 500.2833 with M.C.L. § 500.2832, the former Michigan Standard Fire Policy, which was repealed by Public Act 1990, No. 305.  Melson argues that M.C.L. § 500.2832, which set forth the form of a standard policy and provided coverage to the extent of actual cash value of the property at the time of loss, but not exceeding the amount it would cost to repair or replace the property, was an implicit endorsement of coinsurance clauses.  Melson argues that in recodifying Michigan fire insurance law in the form of M.C.L. § 500.2833 so as to require coverage for actual cash value of the property, the Michigan legislature intended to prohibit coinsurance provisions.  Coupled with the already-discussed repeal of what Melson takes to be the authorizing statute for coinsurance provisions, she argues that coinsurance provisions are against Michigan public policy.

First, as discussed *supra*, Melson's argument is premised on an erroneous assumption that coinsurance policies were authorized by statute, such that the repeal of a statute could effectuate the prohibition of coinsurance clauses.  Second, in reading § 500.2833(1)(a) as prohibiting coinsurance provisions, Melson focuses on only a subsection of that statute, and ignores other relevant provisions.  Although § 500.2833(1)(a) requires that a fire policy provide coverage for the actual cash value at the time of the loss, § 500.2833(1)(f) requires a fire insurance policy to include "[t]hose conditions which result in the suspension or restriction of insurance."  M.C.L. § 500.2833(1)(f).  Given that coinsurance policies do not, as a general rule, violate Michigan public policy, it is consistent with § 500.2833 to include coinsurance provisions in fire insurance policies, because failure to obtain sufficient insurance is a condition that will result in the restriction of insurance.

Like the repeal of § 500.2840, the repeal of § 500.2832 and the codification of § 500.2833 fail to provide a definite indication that this Court should strike the insurance contract as invalid because it is contrary to public policy.  There is no indication that the Michigan Supreme Court would rule differently than did the appellate court in the issue of coinsurance clauses; therefore, this Court will follow *Royal Property*.

---

of four-fifths of the actual cash value thereof, and that, failing so to do, the assured shall be a co-insurer to the extent of such deficit, and in that event shall bear his, her, or their proportion of any loss. It is, however, mutually understood and agreed that in case the total insurance shall exceed four-fifths of the actual cash value of the property insured by this policy the assured shall not recover from this company more than its pro rata share of the whole actual cash value of such property.

*Cheesebrough*, at 110.

## III.  Conclusion

For the foregoing reasons, we **AFFIRM** the opinion of the district court.